UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-20708
_____

JOE H. SELF,

Plaintiff-Appellant,

versus

M&M CHEMICAL COMPANY; SOLITE CORPORATION; CHARLES HORTON,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Texas
(H-96-CV-2613)
_____

March 17, 1999

Before HIGGINBOTHAM, BENAVIDES, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Joe H. Self appeals from an order of the district court dismissing his suit against M&M Chemical Company, Solite Corporation, and Charles Horton ("Defendants") for lack of personal jurisdiction. Because we find that the district court erred by failing to transfer this case to a venue that could assert jurisdiction over the Defendants, we vacate the district court's judgment in part and remand.

Self's suit is based upon injuries he received on August 15,

_____

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1995, at a truck stop in Martinsburg, West Virginia. While Self was kneeling next to his parked truck to adjust the tandem, another truck backed up over Self's foot, causing severe and permanent injuries including damage to the spinal nerve roots in his back. The other truck was driven by Horton, an Alabama resident, who was working at the time for M&M Chemical, an Alabama corporation, which is a subsidiary of Solite, a Virginia corporation.

On August 15, 1996, Self, a Texas resident, filed a personal injury suit against Horton, M&M Chemical, and Solite in the Southern District of Texas, Houston Division, under that court's diversity jurisdiction. Self's complaint alleged that Horton was liable for negligence and that M&M Chemical and Solite were vicariously liable for Horton's negligence under the law of respondeat superior and directly liable for failure to train and supervise. Self sought damages for physical pain, emotional distress, medical expenses, loss of earnings, and physical impairment.

On October 11, 1996, the Defendants filed a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, arguing that none of the Defendants had sufficient Texas contacts to bring them within the reach of the state's long-arm statute. They asserted that neither Horton nor Solite had *any* contacts with Texas. As to M&M Chemical, an attached affidavit from the company's president, Don Burris, attested that M&M Chemical's truckers had transported "no more than seven loads to or from the

2

State of Texas over the last ten years." These contacts, the motion contended, were insufficient to establish general jurisdiction in Texas over M&M Chemical. Self's response to the 12(b)(2) motion contended that the district court did have personal jurisdiction over all three of the Defendants under Texas's long-arm statute. Alternatively, Self requested that, if the court found personal jurisdiction lacking in Texas, it transfer the case to a forum that could assert jurisdiction.

On July 14, 1997, the district court granted the Defendants' motion to dismiss for lack of personal jurisdiction. The court found that it clearly did not have jurisdiction over Horton and Solite as neither had any contacts with Texas. It also found that it did not have jurisdiction over M&M Chemical because seven deliveries over a ten-year period was too brief and intermittent to constitute the "continuous and systematic" contacts necessary to subject M&M Chemical to general jurisdiction in Texas.

The district court also rejected Self's request that the court transfer the case to a proper venue instead of dismissing it. Although the court acknowledged its statutory authorization to order a transfer, it found that Self had not shown that a transfer in this case was warranted. First, the court noted that Self had failed to identify a specific district where the action could be relocated. Second, the court held that because Self had brought the suit in a forum that had no contacts with two of the Defendants and only tenuous contacts with the third, transfer would improperly reward him for his lack of diligence in

selecting a proper forum from the outset.

On July 31, 1997, Self filed a motion for a new trial pursuant to Federal Rule of Civil Procedure 59, and on August 11, 1997, he filed a motion for relief from judgment under Rule 60(b). In both motions, Self argued that newly discovered evidence supported his claim that there was jurisdiction over the Defendants in Texas. Specifically, Self directed the court to a July 2 deposition of Barron Durden, M&M Chemical's trucking superintendent. Durden testified that M&M Chemical had made eighteen deliveries to Texas between 1995 and 1997, which was many more than the seven deliveries over ten years Dan Burris described in his affidavit and the court relied upon in its decision. The motions also stated that Self had been preparing to supplement his response to the dismissal motion with this recently obtained evidence when the order dismissing his case was entered.

On August 14, 1997, while the Rule 59 and 60(b) motions were still pending, Self filed a notice of appeal from the district court's dismissal order. On October 2, 1997, he also filed with the district court a supplemental motion to transfer the case to the Northern District of Alabama. The district court denied Self's Rule 59 and Rule 60(b) motions on March 29, 1998, and two days later denied his supplemental transfer motion. Self neither filed a new notice of appeal nor amended his previously filed notice to include any of the post-dismissal rulings.

DISCUSSION

4

On appeal, Self argues that the district court erred by (1) finding that it could not exercise personal jurisdiction over the Defendants, (2) refusing to transfer the case to the Northern District of Alabama, (3) denying his Rule 59 motion for a new trial, and (4) denying his Rule 60(b) motion for relief from judgment.  We review de novo a district court's determination that it lacks jurisdiction over a non-resident defendant, *see Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997), whereas we review only for abuse of discretion a district court's refusal to transfer a case, *see Peteet v. Dow Chemical Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989), denial of a motion for a new trial, *see Hidden Oaks Limited v. City of Austin*, 138 F.3d 1036, 1049 (5th Cir. 1988), or denial of a motion for relief from judgment under Rule 60(b), *see First Nationwide Bank v. Summer House Joint Venture*, 902 F.2d 1197, 1200 (5th Cir. 1990).

I.   Personal Jurisdiction

We find that the district court did not err in holding that it could not assert personal jurisdiction over the Defendants.  A federal court has jurisdiction over nonresident defendants in a diversity suit to the same extent that a state court in that forum would have jurisdiction.  *See Wilson v. Belin*, 20 F.3d 644, 646 (5th Cir. 1994).  A state court's jurisdiction is delimited by the state's long-arm statute and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  *See Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990).  Because

5

Texas's long-arm statute, Tex. Civ. Prac. & Rem. Code Ann. § 17.042, has been interpreted by the Texas courts as being coextensive with due process, *see Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990), we review any exercise of jurisdiction over nonresident defendants by a federal district court in Texas with reference only to the federal constitutional limitations.

An exercise of jurisdiction over a nonresident defendant comports with due process when two conditions are met. First, the nonresident defendant must have "purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with that forum state." *Belin*, 20 F.3d at 647 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Second, exercising jurisdiction "must not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987)). Additionally, where the plaintiff's claims did not arise out of any of the defendant's contacts with the forum state, as is the undisputed situation in this case, the plaintiff may bring suit in the forum's courts only if those courts can assert general jurisdiction over the defendant. For general jurisdiction to attach, due process requires that a nonresident defendant's "minimum contacts" with the forum state be "continuous and systematic." *Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 415-16 (1984).

It was Self's burden to present to the district court facts

6

sufficient to establish a case for personal jurisdiction over the Defendants.  *See Bullion*, 895 F.2d at 216-17 (quoting *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)).  Because the court made its jurisdictional ruling without an evidentiary hearing, Self's burden could be met by showing only a prima facie case, although that burden would rise to a preponderance of the evidence at trial.  *See Felch*, 92 F.3d at 326.  In deciding whether Self had established a prima facie case, the district court was required to take uncontroverted allegations in Self's complaint as being true and to resolve all conflicts contained in the parties' affidavits in Self's favor.  *See Bullion,* 895 F.2d at 217.

The district court correctly applied these standards in finding that Self did not establish a prima facie case of personal jurisdiction in Texas over M&M Chemical.  Self's complaint did not allege any specific contacts between M&M Chemical and Texas.  Furthermore, the only contacts revealed by the parties' affidavits were M&M Chemical's "no more than seven" deliveries to Texas over a ten year period, attested to by M&M Chemical's president, Don Burris.[1]  Although we have found evidence of an unspecified number of deliveries sufficient to establish a prima facie case of "minimum contacts" in at least

---

[1]Although the discovery performed by Self immediately preceding the district court's ruling revealed Burris may have underestimated the number of Texas deliveries made by M&M Chemical, that information had not been presented to the district court prior to its finding that personal jurisdiction was lacking and thus cannot be considered by this Court on review of that decision.

one context, *see DeMelo v. Touche Marine, Inc.*, 711 F.2d 1260, 1271 & n.13 (1983) (finding a prima facie case for personal jurisdiction based upon an affidavit indicating an unspecified number of product shipments into Mississippi), the greater weight of authority from this circuit suggests that seven deliveries over ten years was not sufficiently "continuous and systematic" to subject M&M Chemical to general jurisdiction. *See Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 328 (5th Cir. 1996) (finding that an unspecified number of truck deliveries into Texas is not sufficiently "continuous and systematic" to create general jurisdiction in Texas); *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, (5th Cir. 1990) (finding that being title record holder to charter boats operated in Louisiana was not sufficiently "continuous and systemic" to create general jurisdiction in Louisiana); *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 375-76 (5th Cir. 1987) (finding that substantial sales through Texas dealers were not sufficiently "continuous and systematic" to subject an airplane manufacturer to general jurisdiction in Texas). Based upon that precedent, we find that the district court properly found that Self had not established a prima facie case for general jurisdiction over M&M Chemical.

The district court also properly applied the due process factors in finding that it could not assert general jurisdiction over Horton. Neither Self's complaint nor any of the affidavits describe or suggest any contacts between Horton and Texas. Without any allegations or evidence presented, the court was

8

clearly correct in finding that a prima facie case for general jurisdiction over Horton was not established.

Although we likewise affirm the district court's finding that it could not assert general jurisdiction over Solite, we are unable to do so on the court's asserted basis that Solite had "absolutely no contacts with Texas." Self alleged in his complaint that "Defendant M&M . . . is the alter ego of Defendant Solite." This allegation was not refuted in any of the Defendants' affidavits,[2] and the district court was therefore required to accept it as true in making its preliminary jurisdictional ruling. When two defendant corporations are established as being alter egos, the contacts of each are attributed to both for jurisdictional purposes. *See Gundle Lining Construction Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 208 (5th Cir. 1996). Thus, in this situation, without any evidence refuting Self's allegation, the district court was required to impute all of M&M Chemical's contacts to Solite. Nevertheless, because M&M Chemical's contacts were insufficient to establish general jurisdiction, we ultimately agree with the district court that Self did not establish a prima facie case for asserting general jurisdiction over Solite either.

II.  Transfer

We find that the district court abused its discretion in

_____

[2]In an affidavit attached to the Defendants' motion to dismiss, J. Wayne Thornton, a vice president of Solite, did attest that Solite, itself, did not have any contacts with Texas. Thornton's affidavit was silent, however, regarding the alleged alter ego relationship between Solite and M&M Chemical.

denying Self's request that, upon a finding that the Defendants were not amenable to personal jurisdiction in Texas, the case be transferred to another venue instead of dismissed. A district court in which a jurisdictionally improper case is filed is empowered by 28 U.S.C. § 1404(a) or § 1406(a) either to dismiss the case or, "if it be in the interest of justice," to transfer it to another venue where jurisdiction may be had. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465-66 (1962); *Bentz v. Recile*, 778 F.2d 1026, 1028 (5th Cir. 1985). The congressional purpose in allowing such transfers, as stated by the Supreme Court in *Goldlawr*, was to "avoid[] the injustice which had often resulted to plaintiffs from dismissal of their actions merely because they had made an erroneous guess with regard to the existence of some elusive fact." *Goldlawr*, 369 U.S. at 466.

Neither of the district court's reasons for refusing to transfer Self's case were sufficient to overcome the injustice Self faced by having his suit extinguished by the court's dismissal. First, Self's failure to identify a specific transferee court in his original response to the motion to dismiss was, at most, a de minimis error. We are aware of no other court that has attached weight to such an omission. Moreover, it was obvious from the facts of this case that courts in both West Virginia and Alabama would likely be able to assert jurisdiction over all of the Defendants. The district court could easily have identified a suitable transferee district either sua sponte or through supplemental briefing by the

10

parties.

Second, we do not agree with the district court that granting a transfer would have rewarded Self for lack of diligence in choosing a proper forum from the outset. As discussed above, M&M Chemical initially admitted to several contacts with Texas and, for purposes of the motion to dismiss, those contacts should have been imputed to Solite as well. Although we are affirming the district court on its jurisdictional ruling, this was a close case in which it was reasonable for Self to have guessed that M&M Chemical, a national hazardous waste disposal company, would have had "continuous and systematic" contacts with Texas. Dismissing Self's action based on his having been unable to find sufficient evidence to support his guess regarding that elusive jurisdictional fact would impose the very injustice that Congress intended to alleviate by permitting transfers under § 1404(a) and § 1406(a).[3] It was, therefore, an abuse of discretion for the district court to have dismissed the case instead of granting Self's request for a

---

[3]We also note that the district court chose to dismiss Self's complaint seven weeks before the discovery deadline contained in its own scheduling order. Although a district court is not required to wait until discovery is completed before ruling on jurisdictional motions, *see Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 & n.4 (5th Cir. 1985), we reject any suggestion that Self, by utilizing the full time provided for discovery by the district court, was not diligent in pursuing the facts necessary to support the court's exercise of jurisdiction. Moreover, we observe that had the district court postponed ruling on the dismissal motion for the few remaining weeks in the discovery period, it could have considered the additional testimony Self obtained in the July 2 deposition of Barron Durden, which contradicted the affidavit of Don Burris relied upon by the court in its decision.

transfer.

III. Rule 59 and 60(b) Motions

We decline to consider Self's arguments that the district court erred by rejecting his Rule 59 motion for a new trial and Rule 60(b) motion for relief from judgment. Because Self filed his notice of appeal before the district court ruled on either of those motions and did not amend his notice to include the court's rulings after they were made, they were not appealed and are not properly before this court.

## CONCLUSION

For the foregoing reasons, we affirm the district court's decision insofar as it found that the Defendants are not amenable to personal jurisdiction in Texas. Nonetheless, we vacate the district court's dismissal of Self's complaint and remand with instructions to transfer this case to a suitable venue where jurisdiction may be had over the Defendants.

AFFIRMED in part, VACATED in part, and REMANDED